1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| CARMEN McELHANEY, | NO.  C10-5387-JPD |
| Plaintiff, | |
| v. | ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Carmen McElhaney appeals the final decision of the Commissioner of the

Social Security Administration ("Commissioner") which denied her applications for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33,

after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

the Commissioner's decision is reversed and remanded for further proceedings.

I.        FACTS AND PROCEDURAL HISTORY

At the time of her administrative hearing, plaintiff was a 47 year-old woman with a

associate arts degree.  Administrative Record ("AR") at 27.  Her past work experience includes

employment as a bus driver and work at an antique store.  AR at 28.  Plaintiff was last

gainfully employed in 2004.  *Id.*

ORDER - 1

On February 14, 2006, plaintiff filed a claim for DIB payments, asserting an onset date of April 15, 2004. AR at 116. Plaintiff asserts that she is disabled due to obesity, degenerative joint disease of the knees, obstructive sleep apnea, diabetes, depressive disorder, severe neck impairment and urinary incontinence. AR at 11-15.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 9. Plaintiff requested a hearing which took place on February 5, 2008. AR at 24-80. On March 28, 2008, the ALJ issued a decision finding plaintiff not disabled and denied benefits. AR at 9-20. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council on April 9, 2010, AR at 1-3, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II.      JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Ms. McElhaney bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At

step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On March 28, 2008, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.    The claimant has not engaged in substantial gainful activity since April 15, 2004, the alleged onset date.

3.    The claimant has the following severe impairments: obesity, degenerative joint disease of the knees, obstructive sleep apnea, diabetes, and a depressive disorder

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she is limited to simple and routine tasks.

6.    The claimant is unable to perform any past relevant work.

7.    The claimant was born on XXXXX, 1960[2] and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.    The claimant has at least a high school education and is able to communicate in English.

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

ORDER - 5

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from April 15, 2004 through the date of this decision.

AR at 11-19.

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.     Did the ALJ properly evaluate the medical evidence?

2.     Did the ALJ properly evaluate the lay witness statements?

3.     Did the ALJ err in his RFC assessment?

4.     Did the ALJ err in his hypothetical by failing to include all of plaintiff's non-exertional limitations? And

5.     Did the ALJ err in relying upon vocational expert ("VE") testimony?

Dkt. No. 15 at 2.  The ALJ's errors relating to plaintiff's financial inability to afford treatment, incontinence, and treatment of lay witness statements affect the entire proceedings and therefore require remand.  Accordingly, the Court's opinion will focus on these issues.  As will be made apparent, the effect of this ruling will require the ALJ to reevaluate all of the medical evidence, call a new VE, reassess the RFC and lay witness testimony.

## VII.     DISCUSSION

A.     Standards for Reviewing Medical Evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

*Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

B.      Plaintiff's Failure to Obtain Treatment

The ALJ discounted plaintiff's urinary incontinence (AR at 15), her mental impairments (AR at 14), and her diabetes (AR at 17-18), based on plaintiff's failure to obtain treatment and suggested that plaintiff's claims of poverty were not well-founded in light of her smoking addiction.  Specifically, the ALJ held

> The claimant testified to numerous problems and the inability to pay for her medical care.  However, the evidence shows that the claimant has reported smoking a pack of cigarettes a day.  If the claimant is able to pay for a pack of cigarettes a day for a condition that her doctors have advised her to stop, and she has, in the past been able to stop for six years, she should be able to pay her sliding scale medical payment and some additional medications.  Additionally, the claimant is still married and her husband works and has a legal obligation to help support her, so she should have an additional source of income.

AR at 17.

The Commissioner may deny benefits if the "claimant meets the disability criteria but fails to obtain treatment that would ameliorate his condition."  *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) (interpreting 20 C.F.R. §§ 404.1530 and 416.930).  However, "the inability to afford treatment is among the circumstances that justify the failure to obtain it."  *Id.* (citing Social Security Ruling 82-59).  "[B]enefits may not be denied to a disabled claimant because of a failure to obtain treatment that the claimant cannot afford."  *Warre v. Commn'r of Social Sec. Admin.*, 439 F.3d 1001, 2006 (9th Cir. 2009) (citing *Gamble*, 68 F.3d at 321).  "This rule implements the agency's official policy: Social Security Ruling (hereinafter "SSR") 82-59 provides that an individual's failure to follow prescribed treatment is justifiable if the individual is unable to afford such treatment."  *Id.*  "Thus, a claimant who meets the disability criteria may not be denied benefits if he is unable to afford the treatment that would help him."  *Gamble*, 68 F.3d at 321.  *See also, Regennitter v. Comm'r of Soc. Sec.*, 166 F.3d 1294 (9th Cir. 1999).

There are two problems with the Commissioner's analysis.  First, failure to follow a diagnosis to quit smoking may not generally be used against a plaintiff's credibility unless the

1   cessation would restore a plaintiff's ability to work and the record supported this finding.

2   *Rousey v. Heclker,* 771 F.2d 1065, 1069 (7th Cir. 1985). In *Shramek v. Apfel*, 226 F.3d 809 ,

3   813 (7th Cir. 2000), the court held

> We note that even if medical evidence had established a link between smoking
> and her symptoms, it is extremely tenuous to infer from the failure to give up
> smoking that the claimant is incredible when she testifies that the condition is
> serious or painful. Given the addictive nature of smoking, the failure to quit is
> as likely attributable to factors unrelated to the effect of smoking on a person's
> health. One does not need to look far to see persons with emphysema or lung
> cancer – directly caused by smoking – who continue to smoke, not because they
> do not suffer gravely from the disease, but because other factors, such as the
> addictive nature of the product impairs their ability to stop. This is an
> unreliable basis on which to rest a credibility determination.

10      Although the Ninth Circuit has not directly addressed the issue, it has found in an

11   analogous situation that an ALJ errs when he makes an adverse credibility determination based

12   on the inability of an obese person to lose weight. *See, e.g., Orn,* 495 F.3d at 637-38, and

13   Social Security Ruling 02-1p at 2, 8-9; 67 Fed. Reg. at 57,861-64..

14      The second error is that the ALJ assumed with no foundation that the cost of a pack of

15   cigarettes would cover plaintiff's costs for medical treatments for her mental health issues, her

16   incontinence, and her diabetes. There is no support in the record for this assumption.

17   Although the ALJ noted that plaintiff attended a "sliding scale" community health provider,

18   there is nothing in the record that would support an inference that by skipping some cigarettes,

19   she would have had the ability to afford medical treatment for her incontinence, her diabetes,

20   and her mental health issues. Because the ALJ focused so much of his discounting of

21   plaintiff's impairments on the fact that she smoke rather than used these "savings" on medical

22   provisions, this matter must be remanded for further proceedings for the ALJ to assess

23   plaintiff's significant impairments and her RFC without benefit of doubting the severity based

24   on her failure to obtain treatment due to her smoking addiction.

25

26

C.      Plaintiff's Incontinence

       1.      *Jerry Rusher, M.D.*

Dr. Rusher evaluated plaintiff May 9, 2006.  AR at 407-413.  Dr. Rusher diagnosed plaintiff with post myocardial infarction, obstructive sleep apnea and narcolepsy, chronic left knee pain secondary to degenerative joint disease, chronic neck pain, chronic low back pain with a history of scoliosis.  AR at 412.  He opined she could be expected to stand and walk no more than four hours in an eight-hour workday, and that she could only sit less than six hours in an eight-hour work day.  *Id.*  He noted she was wearing an adult diaper apparently due to a "rather severe problem" with urinary incontinence which would be expected to "impact her functioning in the workplace," and that she used a cane.  He also found manipulative limitations on reaching, handling, feeling, grasping and fingering.  *Id.*

       2.      *Terry Mallory, ARNP*

Terry Mallory is an adult nurse practitioner who was plaintiff's principal medical contact.  On March 2006, she completed a Department of Social and Health Services ("DSHA") physical evaluation form, in which she found plaintiff suffered from similar problems that Dr. Rusher diagnosed.  AR at 380, 382.  As to plaintiff's incontinence, Nurse Mallory noted "she has almost no bladder control—this makes it difficult to function in any public/social/business work place setting."  AR at 383.

       3.      *Other Medical Records*

That plaintiff suffers from incontinence is also evidenced by other medical records.  AR at 440, 442 which relate to plaintiff's follow-up on her diabetes impairment, found severe by the ALJ.

//

//

//

//

1

        4.      *ALJ's Treatment of Incontinence*

2          Although substantial evidence of plaintiff's incontinence was before the ALJ, the issue

3    was dismissed as being a mere symptom, rather than a diagnosis, and discounted because

4    plaintiff failed to undertake tests necessary to determine the cause.  AR at 15.  The ALJ erred

5    on both counts.

6          Although urinary incontinence is, in fact, a symptom rather than a diagnosis, it is

7    closely associated with diabetes.  The record is replete with references to plaintiff suffering

8    from diabetes.  There are also numerous references discussed above that evidence plaintiff's

9    incontinence.  If the ALJ actually had questions about the relationship between diabetes and

10   incontinence, he had a duty to inquire and to further develop the medical record.  *Smolen v.*

11   *Chater*, 80 F.3d 1273 (9th Cir. 1996).  There is little doubt that this could have an impact on

12   the employability of plaintiff, a matter acknowledged by the VE.  AR at 69-70, 78-79.

13         Moreover, as discussed above, the ALJ erred by discounting plaintiff's urinary

14   incontinence based on her failure to obtain treatment and suggested that plaintiff's claims of

15   poverty were not well-founded in light of her smoking addiction.  This error should be

16   remedied on remand.

17         D.    Lay Witness Testimony

18         Due to her financial circumstances, plaintiff's primary medical provider appears to be

19   Nurse Mallory.  In order to determine whether a claimant is disabled, an ALJ may consider lay

20   witness sources, such as testimony by nurse-practitioners, physicians' assistants, and

21   counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends.

22   20 C.F.R. § 404.1513(d).  Such testimony regarding a claimant's symptoms or how an

23   impairment affects his ability to work is competent evidence and cannot be disregarded

24   without comment.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  This is particularly

25   true for such "non-medical" sources as nurses and medical assistants.  *See* Social Security

26   Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater

percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.").[3]   If an ALJ chooses to discount testimony of a lay witness, especially a treating physician's assistant, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony.  *Id.* at 919.

The ALJ substantially ignored all of Nurse Mallory's findings and opinions without comment.  This includes, but is not limited to, Nurse Mallory's findings that plaintiff had decreased internal rotation of her right shoulder, decreased abduction of her left shoulder and bilateral upper back and shoulder pain, interfering with her ability to lift, handle and carry.  AR at 381-82.  This, of course, would be consistent with the findings of Dr. Rusher, rejected by the ALJ (AR at 15, 18) that plaintiff had limited ability to handle and finger based on neck pain.  Because the ALJ neglected to provide "reasons germane" to Nurse Mallory's opinions, this matter must be remanded for further proceedings.

The ALJ also erred by neglecting to deal with the lay witness statements of Susan Skovald and Jacqueline Strange.  AR at 22-23, 231-32.  This error should be corrected on remand.

## VIII.   CONCLUSION

For the foregoing reasons, this matter is REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  The ALJ is directed to reevaluate all of the medical evidence, revaluate plaintiff's RFC, reassess her

---

[3]  Social Security Rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators.  20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001).  Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

credibility, and call a VE to testify about whether there are any jobs that exist that a person with all of plaintiff's limitations can perform.

DATED this 21st day of March, 2011.

_James P. Donohue_

JAMES P. DONOHUE
United States Magistrate Judge

ORDER - 13